IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| ANS FOOD MARKET<br>2236 North Fulton Avenue<br>Baltimore, Maryland 21217, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. _____ |
| UNITED STATES OF AMERICA,<br>DEPARTMENT OF AGRICULTURE<br>FOOD AND NUTRITION SERVICE, | *<br><br>* | |
| Defendant. | * | |
| **Serve on**:<br>The Honorable Eric H. Holder, Jr.<br>Attorney General of the United States<br>United States Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001; | *<br><br>*<br><br>*<br><br>* | |
| The Honorable Tom Vilsack<br>Secretary of Agriculture<br>United States Department<br>   of Agriculture<br>1400 Independence Avenue, S.W.<br>Washington, D.C. 20250; and | *<br><br>*<br><br>*<br><br>* | |
| Rod J. Rosenstein, Esquire<br>United States Attorney<br>   for the District of Maryland<br>36 South Charles Street, 4th Floor<br>Baltimore, Maryland 21201. | *<br><br>*<br><br>* | |

\* \* \* \* \* \* \* \* \* \* \* \*

# COMPLAINT
**(Petition for Judicial Review of Final Agency Action)**

Plaintiff, ANS Food Market, by its undersigned counsel, files this Complaint against the United States of America, Department of Agriculture Food and Nutrition Service, seeking judicial review of a final agency, and states as follows:

## Parties

1. Plaintiff, ANS Food Market ("ANS"), is a sole proprietorship owned by Young Soon Kim, an adult permanent resident of the State of Maryland, who resides at 7914 Allard Court, Apt 302, Glen Burnie, Maryland 21061.  ANS is a grocery store and delicatessen located at 2236 North Fulton Avenue, Baltimore, Maryland  21217.

2. Defendant, United States of America Department of Agriculture Food and Nutrition Service, is an agency of the executive branch of the United States government.

## Jurisdiction

3. This Court has jurisdiction over this matter pursuant to 7 U.S.C. § 2023(a)(13), 5 U.S.C. § 702, and 28 U.S.C. § 1331.

4. Venue is appropriate in this district pursuant to 7 U.S.C. § 2023(a)(13) and 28 U.S.C. § 1402 because ANS resides, is engaged in business, and has its principal place of business, in this district.

## Standard of Review

5. Pursuant to 7 U.S.C. § 2023(a)(15), this action shall be a trial *de novo* in which the Court shall determine the validity of the questioned administrative action in issue.

**Facts**

6. The Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program, is a program administered by the United States Department of Agriculture's Food and Nutrition Service ("FNS"). Congress designed SNAP to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. The Secretary of Agriculture issues regulations for SNAP, and FNS administers the program. 7 U.S.C. § 2013(c).

7. Benefits received through SNAP "shall be used only to purchase food from retail food stores which have been approved for participation in the supplemental nutrition assistance program." 7 U.S.C. § 2013(a); 7 C.F.R. § 278.2(a). Pertinent regulations make it clear that SNAP benefits "may not be accepted in exchange for cash." 7 C.F.R. § 278.2(a). "Trafficking" is a violation defined as "the buying or selling of [SNAP benefits] for cash or consideration other than eligible food." 7 C.F.R. § 271.2. FNS is authorized to permanently disqualify a store on the first occasion of a trafficking violation. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i).

8. In Maryland, SNAP utilizes an Electronic Benefit Transfer ("EBT") system, and SNAP recipients obtain their benefits through an EBT card. Recipients use their EBT cards to pay for eligible food purchases at authorized stores by inserting the card into a point-of-sale device and entering a personal identification number. The point-of-sale device transmits the information on the sale to an associated host computer, which processes and stores the information.

9. Yong Soon Kim has owned ANS for approximately seven years. She operates it with her husband, Dong Kim. At any one time, Yong Soon Kim and Dong Kim are usually working at ANS. Before February 19, 2014, ANS was authorized to participate in SNAP.

10. ANS is located in the Parkview/Woodbrook neighborhood of Baltimore City. It occupies part of the first floor of a two-story Baltimore building, in a predominantly lower-class urban neighborhood. The rest of the first floor and second floor of the building is used exclusively as a storage area for additional inventory.

11. ANS does not sell alcoholic beverages.

12. ANS primarily sells food products, such as canned meats, canned vegetables, canned and dried soups, baking mixes, cereal, baby food, bread, pasta, and frozen seafood and meats.

13. ANS's store includes a retail space, a deli area, shelves of food goods and other items, and a single point-of-sale device.

14. The store has two self-serve freezers and two self-serve refrigerated cases.

15. Upon information and belief, ANS's customers principally live in the immediate neighborhood, within a walking distance to the store. Most customers walk to the store, although some drive as well.

16. The store layout makes it easy for customers to move around and locate items quickly.

17. Customers often return to ANS within 24 hours to make additional purchases.

18. It is not unusual for customers to shop at ANS several times a day because they live in close proximity to the store.

19. When a customer purchases items, Mrs. Kim and her husband will often attend to a customer at the same time. Mr. Kim will total the cost of the transaction using a calculator while Mrs. Kim will use a point-of-sale device. Mr. Kim will tell his wife the total cost of a transaction, and Mrs. Kim will ring up the transaction using the point-of-sale device. By conducting transactions in this fashion, they are able to expedite the sales process.

20. Upon information and belief, ANS customers who have an EBT card often shared their card with their household members. When these customers visited the store with their household members, ANS accommodated these customers by making separate SNAP transactions from their EBT card and providing separate receipts for each household member's purchase.

21. ANS distinguished itself from its competition and attracted more customers to the store by holding raffles where customers will draw tickets and win prizes.

22. ANS accommodated its increased volume of customers by re-pricing many of its store items that were being sold in large quantities to the same cents value. The re-pricing also increased efficiency.

23. In a letter dated February, 19, 2014, the FNS's Retailer Operations Division charged ANS with SNAP benefit trafficking from August 2013 through November 2013. FNS asserted three violations: (1) "an unusual number of transactions ending in a same cents value;" (2) "multiple purchase transactions were made too rapidly to be credible;"

and (3) "multiple transactions were made from individual benefit accounts in unusually short time frames."

24. ANS has at all times disputed FNSøconclusions as being without merit, completely unsupported by admissible evidence or proof, they are contrary to USDA Center for Nutrition Policy and Promotion and other universally recognized relevant data, they are the result of flawed formulas, statistical analysis and calculations, they are based on inadmissible lay opinion, and based on inaccurate data.In a letter dated February 24, 2014, ANS provided information in response to the charges.

25. In a letter dated March 11, 2014, the FNS's Retailer Operations Division informed ANS that it was being permanently disqualified from participation in SNAP for trafficking.

26. In a letter dated March 20, 2014, ANS, by its former Counsel Steven F. Wrobel, requested an administrative review, which was granted.

27. In a letter dated May 27, 2014, the FNS issued its "Final Agency Decision," concluding that ANS should be permanently disqualified from participating as an authorized retailer in the SNAP program.

28. Upon information and belief, the FNS's decision to disqualify ANS from SNAP was based on an invalid analysis of electronic data gathered from the EBT system.

29. Specifically, all arguments raised by FNS are based on a superficial analysis of the electronic sales records produced when food stamp beneficiaries swipe their Electronic Benefit Transfer ("EBT") cards at a point-of-service ("POS") device located at ANS.

30.     The FNS did not provide any evidence that tied its data to any actual wrongdoing on the part of ANS.

31.     Upon information and belief, no person has ever informed FNS that he or she participated in and/or witnessed any trafficking transactions engaged in by ANS.

32.     Upon information and belief, the FNS is not affording ANS proper due process and is denying ANS equal protection by disqualifying ANS from the SNAP based on ANS providing service to a predominately lower-class, urban neighborhood.

33.     ANS has  never engaged in the trafficking of FNS SNAP benefits.  Neither Yong Soon Kim nor her husband has ever engaged in any such trafficking transactions.

34.     The Food Stamp Act makes clear that the Government is <u>not entitled to deference</u> in its conduct of the proceedings below ó a quasi-evidentiary, non-trial procedure that could permanently strip a ANS of its qualification to serve customers under the food stamp program.

35.     Disqualification may have grave economic consequences to ANS which is engaged in business in a depressed economic area where there is widespread use of food stamps.

36.     In such an area one who holds himself out  as a retailer of food would be cut off from a substantial segment of the buying public if he is disqualified from engaging in food stamp transactions.

37.     Accordingly, ANS will suffer irreparable injury due to its disqualification unless this court stays any administrative action(s) during the pendency of this action. 7 U.S.C. § 2023(a)(17).

38. In anticipation of a Motion for Summary Judgment filed by Defendant, attached is a Rule 56(d) affidavit for further discovery necessary to obtain information on individuals allegedly engaged in the suspect EBT transactions. Such information is in the exclusive control of the Defendant and essentially all of Defendant's arguments rely on assumptions about these individuals actions without allowing the individuals to speak for themselves.

39.

### Claims for Relief

WHEREFORE, ANS demands the following relief:

A. A *de novo* trial in which this Court shall determine the validity of the FNS's final administrative action;

B. An order during the pendency of this action temporarily staying the FNS's administrative action;

C. A judgment and order in accordance with the law and the evidence that determines that the FNS's administrative action is invalid and that reverses that action;

D. An order awarding ANS its reasonable costs and attorneys' fees; and

E. Such other and further relief as is appropriate.

### PRAYER FOR JURY TRIAL

Plaintiff demands that all issues be tried by a jury.

Respectfully submitted,

/s/ Patrick S. Preller

Patrick S. Preller, Esquire
The Law Office Patrick Preller, LLC
218 E. Lexington Street, Suite 700
Baltimore, Maryland 21202
Phone (410)539-0042
Fax (410)539-2955
*Attorney for Plaintiff*

Counsel for Plaintiff