IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ANS FOOD MARKET,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | **CIVIL NO. JKB-14-2071** |
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM

Plaintiff ANS Food Market ("Plaintiff") owns and operates a grocery store and delicatessen in Baltimore, Maryland. In 2014, the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("Defendant") disqualified Plaintiff from the federal Supplemental Nutrition Assistance Program ("SNAP," and formerly known as the food stamps program). Plaintiff brought this suit to appeal the agency's decision. (*See* ECF No. 1.) Now pending before the Court is Defendant's motion for summary judgment. (ECF No. 8.) The issues have been briefed (ECF Nos. 8, 14, 17), and no hearing is required, Local Rule 105.6. For the reasons explained below, Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.

A.   **BACKGROUND**[1]

SNAP "provides eligible households with [SNAP benefits] that may be used to purchase qualifying food items at authorized retail stores." *AJS Petroleum, Inc. v. United States*, 2012 WL 683538, at *1 (D. Md. Mar. 1, 2011). SNAP recipients use Electronic Benefit Transfer ("EBT")

---

[1] The Court here recounts the facts in the light most favorable to Plaintiff, the party opposing the motion for summary judgment. *See Scott v. Harris*, 550 U.S. 372, 278 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

cards to purchase qualified goods, in lieu of the outdated paper food stamps system.  (*See* ECF No. 1 ¶ 8.)  Authorized SNAP retailers simply swipe a customer's EBT card using a point-of-sale device—like they would a credit or debit card.  (*See id.*)  The transaction debits the customer's SNAP account, and the retailer is subsequently reimbursed by the government.  Because the SNAP system is managed electronically, the FNS has the ability to record and monitor remotely all EBT transactions.  (*See id.*)

Before February 19, 2014, Plaintiff was an authorized SNAP retailer; Plaintiff's customers could use SNAP benefits to purchase qualified goods.  (*Id.* ¶ 9.)  After detecting unusual SNAP transaction activity at Plaintiff's store, the FNS audited Plaintiff's SNAP transactions from August through November of 2013.  In its review, the FNS discovered patterns of SNAP transactions that may present as a symptom of unlawful SNAP trafficking.[2]  The FNS also compared Plaintiff's transaction activity with similar stores, and conducted a site visit, as part of the audit.

On February 19, 2014, the FNS issued a letter charging Plaintiff with unlawful trafficking, demonstrated primarily by three statistical anomalies: (1) "an unusual number of transactions ending in a same cents value;" (2) "multiple purchase transactions were made too rapidly to be credible;" and (3) "multiple transactions were made from individual benefit accounts in unusually short time frames."  (ECF No. 1 ¶ 23.)  Plaintiff disputed the FNS's charges, and proffered lawful explanations for the unusual activity.  (*Id.* ¶ 24.)  On March 11, 2014, the FNS permanently disqualified ANS from the SNAP program.  (*Id.* ¶ 25.)  ANS sought administrative review, and the FNS issued its "Final Agency Decision" on May 27, 2014, confirming the decision to permanently disqualify Plaintiff.  (*Id.* ¶ 27.)  On June 26, 2014,

---

[2] SNAP trafficking entails "the buying or selling of [SNAP credits] . . . for cash or consideration other than eligible food."  7 C.F.R. § 271.2.

Plaintiff brought this suit seeking judicial review of the agency's action. (ECF No. 1.) Defendant filed its motion for summary judgment on September 15, 2014 (ECF No. 8), before discovery. Plaintiff filed its response in opposition on November 3, 2014 (ECF No. 14), and Defendant filed its reply on November 21 (ECF No. 17).

### B. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

Pursuant to Fed. R. Civ. P. 56(d), a court may allow a nonmoving party additional time to take discovery if the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson*, 477 U.S. at 250 n.5). In particular, where the nonmovant has not been afforded an opportunity to take discovery, Rule 56(d) "is designed to safeguard against a premature or improvident grant of summary judgment." *Pasternak v. Lear Petrol. Exploration, Inc.*, 790 F.2d 828, 833 (10th Cir. 1986).

C.  ANALYSIS

Congress established SNAP "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. The program's critical objective explains Congress's decision to make SNAP "trafficking"—the exchange of SNAP benefits for cash or other goods aside from SNAP-eligible food—a strict liability offense. *See Idias v. United States*, 359 F.3d 695, 697 (4th Cir. 2004). Indeed, "a store that is caught trafficking in food stamps *even one time* must be permanently disqualified from [SNAP], unless the Secretary of Agriculture determines that the store had in place an effective anti-trafficking policy." *Id.* (emphasis added). To prove that trafficking has taken place, the Government may rely on circumstantial evidence such as EBT transaction reports. *Id.* at 698.

The Court reviews the agency's action *de novo*, meaning that the Court is not bound by the administrative record. 7 U.S.C. § 2023(a)(13), (15); *see also AJS Petroleum*, 2012 WL 683538, at *4 ("In seeking to disprove the violations, [the retailer] is not limited to the factual record before the agency, but may rely on other evidence as well.") Still, the agency's action has

a presumption of validity and "the retailer bears the ultimate burden of proving by a preponderance of the evidence that the alleged violations did not occur."[3] *Id.*

In this case, Defendant relies on data that are compelling, though not dispositive, in deciding to permanently disqualify Plaintiff from SNAP. In the four-month audit of Plaintiff's store, Defendant uncovered EBT transaction patterns associated with unlawful trafficking. Further, Defendant found that Plaintiff outperformed comparable stores by wide margins. A site visit allegedly bolstered Defendant's suspicions that Plaintiff's high volume of EBT activity was unlikely, absent trafficking. All told, Defendant presents a highly suspicious set of circumstances.

That said, Defendant seeks summary judgment before discovery, and the Court cannot say at this early stage that it is impossible for Plaintiff to meet its burden, i.e., the Court cannot say that "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (citing *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995)). Plaintiff requests discovery via a Rule 56(d) affidavit, specifically to identify customers who made suspicious transactions, and to acquire a full set of its EBT transaction data. (*See* ECF No. 1-3; ECF No. 14-1.) It is irrelevant that Defendant did not rely on this evidence in disqualifying Plaintiff. The Court is not bound by the administrative record. And while the agency's action enjoys a presumption of validity, Plaintiff must be permitted an opportunity for

---

[3] Plaintiff contends that the burden remains with Defendant, and yet fails to cite to any case that expressly so holds. Instead, as articulated by the Fifth, Sixth, Seventh, and Ninth Circuit Courts of Appeals, as well as in prior decisions of this court, Plaintiff bears the burden of proof on judicial review of the agency's action. *See, e.g.*, *Fells v. United States*, 627 F.3d 1250, 1253 (7th Cir. 2010); *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991); *Redmond v. United States*, 507 F.2d 1007, 1012 (5th Cir. 1975); *AJS Petroleum*, 2012 WL 683538, at *4; *Rodriguez Grocery & Deli v. United States*, 2011 WL 1838290, at *3 (D. Md. May 12, 2011); *2341 E. Fayette St., Inc. v. United States*, 2005 WL 2373696, at *1 (D. Md. Sept. 26, 2005); *Idias v. United States*, Civ. No. 5-793-F, at *4 (D. Md. Mar. 20, 2002).

rebuttal. In doing so, Plaintiff may produce evidence that challenges whether Defendant correctly inferred that Plaintiff was engaged in trafficking.

This Court has not always allowed discovery before issuing judgment in similar cases.[4] In *AJS Petroleum*, the FNS uncovered egregious and irrefutable evidence of trafficking. 2012 WL 683538. The retailer's SNAP benefit redemptions inexplicably exceeded the retailer's total food purchases over several months; somehow the retailer appeared to be selling more goods than it had bought to stock its shelves. *See id.*, at *6. And in *Bernal Deli Grocery v. United States*, the retailer failed to file a Rule 56(d) affidavit requesting time for discovery; this issue was never raised. Civ. No. MJG-10-1761 (D. Md. Aug. 26, 2011). But *without* such undeniable evidence, and *with* a Rule 56(d) affidavit, courts have allowed discovery. *See Idias*, 359 F.3d at 698 (referencing the retailer's reliance on "affidavits from some of the customers whose transactions had been flagged as questionable"); *Rodriguez Grocery*, 2011 WL 1838290, at *5 (denying the government's motion for summary judgment where there had been no discovery, the retailer had filed a Rule 56(d) affidavit, and the retailer sought both the identities of customers involved in alleged trafficking as well as a full set of EBT transaction data).

The Court is skeptical that discovery will produce evidence sufficient to survive a subsequent dispositive motion by Defendant. Indeed, the Court questions why Plaintiff failed to attach any affidavits, declarations, or other evidence in support of its brief in opposition. As an example, Plaintiff attempts to explain one instance of suspicious transaction activity with the contention that it is possible for "two or three items [from Plaintiff's store to] add up to exactly eighty or one-hundred dollars." (*See* ECF No. 14 at 26.) Plaintiff's argument is entirely

---

[4] Plaintiff makes the bold statement that "[*n*]*o district court in the Fourth Circuit* has granted summary judgment for the Government in a food stamp case, where a trafficking charge is contested at a *de novo* trial, *without permitting discovery*." (ECF No. 14 at 12 (emphasis in original).) This claim is simply false. *See AJS Petroleum*, 2012 WL 683538; *Bernal Deli Grocery v. United States*, Civ. No. MJG-10-1761 (D. Md. Aug. 26, 2011). Counsel is cautioned against such over statement in the future as it raises professionalism concerns.

hypothetical, and the Court is dubious that two SNAP-eligible items could be so expensive without any evidence to suggest otherwise. But without discovery, the Court cannot conclude as a matter of law that it is impossible for Plaintiff to meet its burden.

In addition to disputing that it had engaged in trafficking, Plaintiff references the Equal Protection Clause and Due Process Clause in its complaint. (*See* ECF No. 1 ¶ 32.) To the extent that Plaintiff intends to make a constitutional challenge to the agency's action, the complaint is wholly insufficient as it relies exclusively on conclusory allegations. Plaintiff does not attempt to substantiate how "FNS is not affording ANS proper due process," or how FNS is discriminating against Plaintiff based on the socio-economic status of Plaintiff's clientele. On this issue alone, the Court analyzes Defendant's motion as a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court will grant Defendant's motion on this narrow issue, and will dismiss Plaintiff's constitutional challenges.

Finally, the Court disposes of Plaintiff's request for a stay of the agency's action during the pendency of this judicial review. (*See* ECF No. 1 ¶ 39.) The statute does allow a court to stay some administrative actions during the pendency of judicial review "after a hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury . . . ." 7 U.S.C. § 2023(a)(17). In the very next clause, however, the statute explains that "[n]otwithstanding any other provision of this subsection, any permanent disqualification of a retail food store . . . [from the SNAP program] shall be effective from the date of receipt of the notice of disqualification." *Id.* § 2023(a)(18). The Department of Agriculture has clarified that "permanent disqualification actions . . . shall not be subject to such a stay of administrative action." 7 C.F.R. § 279.7. Thus, Plaintiff is not entitled to a stay of the administrative action during this judicial review.

**D.     CONCLUSION**

Accordingly, an order shall issue GRANTING IN PART and DENYING IN PART WITHOUT PREJUDICE Defendant's motion for summary judgment (ECF No. 8).

DATED this 22nd day of April, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge